**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | |
|---|---|
| **KERRY NATHANIEL MULDREW** | **PLAINTIFF** |
| **v. NO. 4:26-cv-00205-LPR-PSH** | |
| **FRANK J. BISIGNANO, Commissioner of the Social Security Administration** | **DEFENDANT** |

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following proposed Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

In this case, filed pursuant to 42 U.S.C. 405(g), plaintiff Kerry Nathaniel Muldrew ("Muldrew") challenges the denial of his application for supplemental security income payments. Muldrew does so on two grounds, one of which has merit. He maintains that in the assessment of his residual functional capacity, his need for a "hand-held assistive device" (hereinafter "cane") was not evaluated. The undersigned agrees, and the failure to evaluate his need for a cane is not harmless error. The decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence on the record as a whole, and this case should be remanded.[1]

The ALJ uses a sequential evaluation process for determining if a claimant is disabled for purposes of the Social Security Act. One part of the process requires the ALJ to assess the claimant's residual functional capacity, which is a determination of the most the claimant can do despite his limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004).

---

[1] The question is whether the ALJ's findings are supported by "substantial evidence on the record as a whole and not based on any legal error." See Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the [ALJ's] conclusion." See Id. "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." See Lucus v. Saul, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting Collins v. Astrue, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted)).

Muldrew maintains that there is a "longitudinal record showing a prescription for [a cane] and numerous objective and clinical evidence showing [his] consistent need for the cane for balance and gait instability." See Docket Entry 6 at CM/ECF 6.[2] As the Commissioner of the Social Security Administration ("Commissioner") correctly points out, though, Muldrew only cites to six pages of evidence in the record to support his assertion. See Docket Entry 8 at CM/ECF 5 (noting Muldrew's citation to Transcript pages 49, 402, 265, 539, 556, 582). Muldrew's failure to cite more evidence in the record is understandable, as the undersigned's review of the record confirms that there is minimal additional evidence relevant to his need for a cane for balance and gait instability. Regardless, the relevant evidence appears to include the following.

---

2 Muldrew supports his assertion by offering the following evidence:

> ... Muldrew was prescribed a cane January 26, 2024, after reports of dizziness and balance issues following his October 2023 stroke (Tr. 582). His providers made clinical observations of his abnormal gait in the form of a right foot drag and left sided lean (Tr. 402) and consequently referred ... Muldrew to physical therapy for coordination, gait, and balance therapy (Tr. 556). ... Muldrew's disequilibrium led his providers to conduct a CT of his head and neck (Tr. 539). Additionally, ... Muldrew reported use of a cane for ambulation in his February 2024 function report (Tr. 265), which was further supported by his April 2025 hearing testimony that he uses his cane when going out in public or walking long distances (Tr. 49).

See Docket Entry 6 at CM/ECF 6.

The medical evidence in the record consists almost entirely of treatment notes from Muldrew's presentations at the University of Arkansas for Medical Sciences ("UAMS"). The relevant notes reflect that on October 1, 2023, he presented complaining of right-sided tingling and weakness. See Transcript at 399. He reported feeling off balance when walking and feeling as if his right leg were dragging. Upon examination, he was six feet tall and weighed 320 pounds. He had an abnormal gait and appeared to drag his right leg. Muldrew was admitted to the hospital and treated for, inter alia, balance problems, right-sided weakness, and a "left pontine stroke." See Transcript at 437. He was discharged three days later, at which time his gait and station were "normal in casual walking." See Transcript at 440. At follow-up examinations, his gait was normal, see Transcript at 390; or "better now," see Transcript at 372; and he reported being able to walk a block, see Transcript at 393.

Muldrew had a follow-up examination on January 26, 2024. See Transcript at 582. Although his gait was "fairly okay," he was unstable and required help to stabilize. See Transcript at 583. He was referred for physical therapy, and a cane was prescribed. See Transcript at 582, 584.[3]

[3] The record contains a second mention of a prescription for a cane. See Transcript at 556. The mention of the cane appears to be a part of a Problems List summary compiled by the UAMS staff.

Muldrew continued to seek care for his various medical problems. The later treatment notes make no mention of his need for, or use of, a cane. The notes offer very little insight into his balance and gait instability but do offer a bit. For instance, on April 16, 2024, he was seen for obesity and weight management. See Transcript at 558. He weighed 316 pounds at the time. His physical activity was recorded to be as follows: "teaches football, walks, but will increase walking." See Transcript at 559. On December 13, 2024, Muldrew was seen again for obesity and weight management. See Transcript at 1125. He weighed 297 pounds at the time. He reported that he was "[s]taying active teaching football and walking" and was "[f]ixing to move on to basketball ..." See Transcript at 1125.[4]

On February 12, 2024, Muldrew completed a function report in connection with his application. See Transcript at 259-266. The report reflects that his right leg and foot continue to tingle and are numb. He cannot walk long distances and cannot walk for any length of time. His balance is "off a lot when [he] goes from sitting to standing." See Transcript at 259. He cannot perform any household chores and cannot

[4] Muldrew notes that his "disequilibrium led his providers to conduct a CT of his head and neck (Tr. 539)." See Docket Entry 6 at CM/ECF 6. The undersigned agrees with the Commissioner, though, that the "diagnostic imaging is irrelevant to [Muldrew's] cane usage." See Docket Entry 8 at CM/ECF 6.

perform any yard work. Muldrew cannot drive an automobile because his hands and feet do not work properly. He leaves his house to attend appointments and shop for groceries. He can only walk ten feet before he must stop and rest, and once he stops, he is "done with walking." See Transcript at 264. He uses a cane when "getting up from [a] sitting position" and "when walking." See Transcript at 265.

Muldrew testified during the administrative hearing. See Transcript at 41-54. He is five feet, eleven inches tall and weighs 308 pounds. He has not fully recovered from his stroke, as he still has numbness on his right side. Muldrew uses a cane to move around and walk long distances outside his home. He continues to have poor balance, having occasionally fallen, and has occasional dizzy spells and lightheadedness.

The ALJ assessed Muldrew's residual functional capacity and found that he can perform the full range of light work. In making the assessment, the ALJ made no mention of Muldrew's use of a cane.

Muldrew challenges the assessment, noting that the ALJ failed to make specific findings as to whether his cane is medically required and whether its use is supported by the medical record. Muldrew maintains that the failure to address his need for a cane impedes the ability to review the ALJ's decision, is not harmless error, and warrants a remand.

The Commissioner maintains in response that there is no evidence Muldrew's use of a cane is "medically necessary," as he has not offered the required medical documentation to support his need for a cane. See Docket Entry 8 at CM/ECF 4. The Commissioner supports his position by noting the following:

> Plaintiff points to his own statements at the administrative hearing and in his function report (Pl. Br. 6; Tr. 49, 265), neither of which constitute medical documentation. Plaintiff points to "clinical observations of his abnormal gait" (Pl. Br. 6; Tr. 402), yet that particular observation was made when he sought emergency treatment for his cerebrovascular event, and treatment notes upon his discharge, just three days later, stated he "was normal in casual walking" (Tr. 440). Plaintiff points to a need for a CT of his head and neck (Pl. Br. 6; Tr. 539), which is merely an order for diagnostic imaging irrelevant to cane usage. At most, Plaintiff points to two references to a prescription for a cane (Pl. Br. 6; Tr. 556, 582), but neither reference constitutes the required medical documentation.
>
> Plaintiff concludes his argument by stating that the "ALJ's failure to consider the medical necessity of [his] hand-held assistive device was not a harmless error" (Pl. Br. 7). To the contrary, as discussed, it was not error at all. There can be no error when the record is "devoid of any 'medical documentation' establishing Plaintiff's cane is 'medically necessary.'" Mya Y., 2021 WL 3023691 at 5. Plaintiff has not identified a basis for remand.

See Docket Entry 8 at CM/ECF 5-6.

The parties agree that Muldrew's assertion of error is governed by Social Security Ruling 96-9p ("Ruling 96-9p"). The relevant part of the Ruling provides, in full, the following:

> **Medically required hand-held assistive device:** To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

See 1996 WL 374185, 7 (July 2, 1996).

The question here is not whether Muldrew uses a cane or whether he derives some benefit from using it. He uses a cane, and he testified that he derives some benefit from using it. The question is also not whether the ALJ evaluated Muldrew's need for a cane in assessing his residual functional capacity. The ALJ did not, and he erred when he failed to do so, as there is some evidence to support Muldrew's need for a cane. Instead, the question is whether the ALJ's error is harmless. The undersigned is persuaded that it is not harmless error.

Determining if a cane is medically required is not always an easy undertaking, as the type and specificity of the documentation the claimant must provide is not well-settled. For instance, a Minnesota federal district court, when confronted with the issue, found the following:

> As the Courts of this District have recognized, the Eighth Circuit Court of Appeals has not addressed what specific documentation a claimant must provide to establish the limitations of a medically required hand-held assistive device. [Citations omitted]. With no guidance from the Eighth Circuit Court of Appeals, the Courts of this District and other Districts within the Eighth Circuit have cited favorable to the Third, Seventh, and Tenth Circuits which have required an unambiguous opinion from a physician stating the circumstance in which the assistive device is medically necessary. Patricia M., 2020 WL 3633218, at 8; Edwards, 2019 WL 1320314, at 14; Tripp v. Astrue, 489 F. App'x 951, 954 (7th Cir. 2012) (finding that the treating physician's statement that the claimant "does need a crutch" lacked the specificity to establish whether the crutch was a medical necessity); Staples v. Astrue, 329 F. App'x 189, 191–92 (10th Cir. 2009) (finding that the treating physician's statement that the claimant "still uses a cane to walk" was insufficient to establish medical necessity); Howze v. Barnhart, 53 F. App'x 218, 222 (3d Cir. 2002) (finding that the evidence did not establish the claimant's cane was medically necessary when the treating physician provided a "script" for a cane and checked a box labelled "hand-held assistive device medically required for ambulation" in a report). In other words, the plaintiff "must show the cane is medically required by offering medical documentation that (1) demonstrates the cane is necessary to help her walk or stand and (2) describes the circumstances in which the device is needed." [Citation omitted].

See Mya Y. v. Saul, No. 20-cv-1296-JRT-LIB, 2021 WL 3023691, 5 (D.Minn. June 28, 2021), report and recommendation adopted, No. 20-cv-1296-JRT, 2021 WL 3022723 (D.Minn. July 16, 2021). A prescription for a cane, or a lack thereof, is not always dispositive of medical necessity, but the ALJ must make a finding as to whether a cane is necessary when there is evidence one is necessary. See Keith v. Commissioner of the Social Security Administration, No. 2:24-cv-00176-BRW-JTK, 2025 WL 893396, 3 (E.D.Ark. Mar. 24, 2025), report and recommendation adopted sub nom. No. 2:24-cv-176-DPM, 2025 WL 1161367 (E.D.Ark. Apr. 21, 2025).

Here, Dr. Geetabahen A. Sakariya, M.D. ("Sakariya") prescribed a cane for Muldrew. See Transcript at 582, 584.[5] The prescription is embedded in a treatment note. Sadly, though, the note provides very little information to substantiate Muldrew's need for a cane or when its use is necessary; the information is limited to the following observations:

---

[5] As to whether other matters can serve as the necessary medical documentation, the undersigned adopts the following assertion made by the Commissioner:

> ... Plaintiff points to his own statements at the administrative hearing and in his function report (Pl. Br. 6; Tr. 49, 265), neither of which constitute medical documentation. Plaintiff points to "clinical observations of his abnormal gait" (Pl. Br. 6; Tr. 402), yet that particular observation was made when he sought emergency treatment for his cerebrovascular event, and treatment notes upon his discharge, just three days later, stated he "was normal in casual walking" (Tr. 440). ...

See Docket Entry 8 at CM/ECF 5-6.

> General: awake, alert, NAD, **gait** is fairly okay however he is unstable when he takes his [blood pressure] meds at home, and takes help from his wife to stabilize.
>
> ...
>
> MSK: normal posture and fairly normal **gait** with support, full ROM.

See Transcript at 583 (bold and underline in original).

Are Sakariya's prescription and observations sufficient evidence that Muldrew's use of a cane is medically required? Or in the parlance of Mya Y, are they medical documentation that demonstrates a cane is necessary to help Muldrew stand or walk and describes the circumstances in which a cane is needed? Were the undersigned tasked with answering those questions in the first instance, it would be one thing. The undersigned, though, is not. The ALJ is the one tasked with that undertaking in the first instance, and he failed to evaluate if Muldrew's use of a cane is medically required. The only issue is whether a remand is required.

Muldrew represents, and the undersigned agrees, that an error is harmless when there is no indication the ALJ would have decided a case differently absent an error. See Docket Entry 6 at CM/ECF 7 [citing Van Vickle v. Astrue, 539 F.3d 825 (8th Cir. 2008)]. Here, the undersigned cannot say that the ALJ's error is harmless.

The ALJ found that Muldrew can perform the full range of light work, which involves a good deal of standing and walking. See 20 C.F.R. 404.1567(b). In Frankl v. Shalala, 47 F.3d 935 (8th Cir. 1995), the Court of Appeals observed that light work requires a claimant to be capable of standing or walking for a total of six hours in an eight-hour workday. Determining whether Muldrew's use of a cane is medically required will likely have a significant impact on whether he can perform the full range of light work, specifically, whether he can stand or walk for a total of six hours in an eight-hour workday. Although the undersigned certainly has an opinion, that determination must be made and should be made by the ALJ in the first instance.

The undersigned recognizes that the medical evidence here is not particularly compelling, and it may be that the ALJ ultimately finds that Muldrew's use of a cane is not medically required. Muldrew does, though, have a prescription for a cane and represented in a function report and his testimony that he uses the cane to stand and walk. The determination as to whether the cane is medically necessary is for the ALJ in the first instance. The undersigned therefore recommends that this case be remanded, and the ALJ ordered to evaluate whether Muldrew's use of a cane is medical required. Judgment should be entered for Muldrew.

DATED this 10th day of September, 2026.

UNITED STATES MAGISTRATE JUDGE